UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

May 24, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Vicki S. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-1211-BAH

Dear Counsel:

On May 20, 2022, Plaintiff Vicki S. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case, ECF 8, the parties' cross-motions for summary judgment,[1] ECFs 12 and 15, and Plaintiff's reply brief, ECF 16. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will GRANT Plaintiff's motion insofar as it seeks remand as remedy, DENY Defendant's motion, REVERSE the Commissioner's decision, and REMAND the case to the Commissioner for further consideration. This letter explains why.

I.      **PROCEDURAL BACKGROUND**

Plaintiff protectively filed a Title II application for Disability Insurance Benefits ("DIB") on January 31, 2019, alleging a disability onset of September 9, 2014. Tr. 205–09. Plaintiff's claim was denied initially and on reconsideration. Tr. 82–86, 88–90. On June 16, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 32–61. Following the hearing, on September 1, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 15–26. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable

---

[1] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file dispositive "briefs" rather than "motions for summary judgment." Here, Plaintiff filed a motion for summary judgment. Defendant's filing is docketed as a brief but styled as a motion for summary judgment. As such, I will refer to Defendant's filing as a motion.

[2] 42 U.S.C. §§ 301 et seq.

decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

II.  **THE ALJ'S DECISION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of September 9, 2014 through her date last insured of December 31, 2016." Tr. 18. At step two, the ALJ found that "[t]hrough the date last insured," Plaintiff suffered from the severe impairments of "celiac disease, fibromyalgia, status post right ankle ORIF [open reduction and internal fixation] with hardware replacement, migraine headaches, parietal headache, chronic pain, myalgia, lumbago, and obesity." *Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairments of gastroesophageal reflux disease (GERD), fatty liver, carpal tunnel syndrome (CTS), trigger finger, enthesopathy of the hips, cervicalgia, ulnar neuropathy at the elbow, and adjustment disorder. *Id.* At step three, the ALJ determined that, "[t]hrough the date last insured," Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 20. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR § 404.1567(a) except she can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit for six hours out of an 8-hour workday, stand for two hours out of an 8-hour workday, and walk for two hours out of an 8-hour workday. She can occasionally climb ramps and stairs and stoop. She can never climb ropes, ladders, and scaffolds, crouch, crawl, and kneel. She cannot push or pull nor operate foot controls with the lower right extremity. She can have no exposure to workplace hazards such as unprotected heights, moving machinery, open flames, open bodies of water, and vibration. She can never operate motor vehicle.

Tr. 21. After considering testimony from a vocational expert, the ALJ determined that, through the date last insured, Plaintiff was able to perform past relevant work as a secretary (DOT[3] Code

---

[3] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected*

*Vicki S. v. Kijakazi*
Civil No. 22-1211-BAH
May 24, 2023
Page 3

201.362-030) and a composite job consisting of the positions of office manager (DOT Code 169.167-034) and groundskeeper (DOT Code 406.684-014). Tr. 25–26. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 26.

### III.  LEGAL STANDARD

As noted, the scope of this Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *see also Britt v. Saul*, 860 F. App'x 256, 259 (4th Cir. 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)) ("A disability determination must be affirmed so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence."). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).

Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("[Substantial evidence] means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.""). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.  ANALYSIS

Plaintiff raises one main argument on appeal: that the ALJ erroneously evaluated Plaintiff's symptoms of severe fibromyalgia in violation of *Arakas v. Commissioner*, 983 F.3d 83 (4th Cir. 2020). ECF 12-2, at 9–26. Specifically, Plaintiff argues that the ALJ erred at the second step of the symptoms analysis "by impermissibly discarding Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms based on three main themes, which include (1) minimal objective findings on examination; (2) the type of treatment she received for her fibromyalgia; and (3) her ability to perform activities of daily living." ECF 12-2, at 11.

Defendant counters that the ALJ properly evaluated Plaintiff's symptoms in compliance

---

*Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

with the relevant regulations and Fourth Circuit law. ECF 15-1, at 6–13. Defendant argues first that because Plaintiff's fibromyalgia diagnosis came in 2018, after the date last insured (December 31, 2016), "the ALJ was not obliged to consider fibromyalgia as a medically determinable impairment during the relevant period of September 2014 through December 2016," and that the ALJ afforded Plaintiff "significant benefit of the doubt[] by reducing her residual functional capacity" in consideration of Plaintiff's fibromyalgia and ankle fracture. ECF 15-1, at 6.

An ALJ properly analyzes a claimant's subjective complaints by using a two-part test. *See Craig*, 76 F.3d at 594–95 (discussing the two-part framework used in the Fourth Circuit). First, the ALJ must assess the objective medical evidence and determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged. 20 C.F.R. § 404.1529(b). If the first step is met, the ALJ then determines how the extent and severity of those symptoms affect the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c).

The Fourth Circuit has "consistently held that 'while there must be objective medical evidence of some condition that could reasonably produce the pain, [at the second step,] there need not be objective evidence of the pain itself or its intensity.'" *Arakas*, 983 F.3d at 95 (quoting *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989)). In *Arakas*, the Fourth Circuit held that, "at the second step, the ALJ improperly discredited [the claimant]'s statements about the severity, persistence, and limiting effects of her symptoms because [the ALJ] did not find them to be 'completely consistent with the objective evidence.'" *Id.* at 96 (internal citations omitted). Under *Arakas*, claimants are "entitled to rely exclusively on subjective evidence" to prove the severity and extent of their symptoms. *Id.* (quoting *Hines v. Barnhart*, 453 F.3d 559, 563, 565 (4th Cir. 2006)). An ALJ may not "'improperly increase[ the claimant's] burden of proof' by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." *Id.* (quoting *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017)). "This type of legal error is particularly pronounced in a case involving fibromyalgia—a disease whose 'symptoms are entirely subjective,' with the exception of trigger-point evidence[.]" *Id.* (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). At the same time, however, "a claimant's allegations about her pain" "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can be reasonably be expected to cause the pain the claimant alleges she suffers." *Craig*, 76 F.3d at 595.

Defendant's first argument—that the ALJ was not required to consider Plaintiff's fibromyalgia and as a medically determinable impairment before the date last insured because the diagnosis came later—is unavailing. The date last insured matters because "[t]o become entitled to disability insurance benefits, [a claimant] must have disability insured status in the first full month that [they] are disabled . . . ." 20 C.F.R. § 404.131(b). "For title II Disability Insurance Benefit (DIB) claims, adjudicators cannot establish onset after the [date last insured]." Program Operations Manual System ("POMS") DI 25501.320, available at https://secure.ssa.gov/poms.nsf/lnx/0425501320. Evidence postdating the date last insured may still be relevant for determining disability (and evaluating the severity of symptoms) during the

*Vicki S. v. Kijakazi*
Civil No. 22-1211-BAH
May 24, 2023
Page 5

relevant time period. *See Allord v. Barnhart,* 455 F.3d 818, 822 (7th Cir. 2006) ("Retrospective diagnosis of an impairment, even if uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment.")

Here, the ALJ explicitly concluded that Plaintiff's fibromyalgia was severe "[t]hrough the date last insured." Tr. 18. The ALJ also determined at the first step of the symptoms analysis that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 23. Thus, the ALJ was required to consider Plaintiff's complaints related to fibromyalgia during the relevant period, even though those complaints predate the formal diagnosis.

I turn now to whether the ALJ employed the proper legal framework in evaluating Plaintiff's symptoms. As noted, at the first step of the symptoms analysis, the ALJ properly determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." *Id.* That is not in dispute. At step two of the symptoms analysis, the ALJ summarized Plaintiff's treatment history and found "that the conservative nature of the treatment received by the claimant is inconsistent with the alleged severity of her symptoms." Tr. 24. Additionally, in evaluating the opinion of Plaintiff's primary care provider ("PCP"), the ALJ explained that she did not believe that the PCP's "findings accurately describe the severity of the claimant's symptoms prior to the date last insured. In that regard, the severity of the claimant's symptoms appear related to her fibromyalgia and status post right ankle ORIF both of which were diagnosed/occurred after the date last insured[.]" Tr. 25.

Despite finding that that Plaintiff's fibromyalgia was severe during the relevant period, the ALJ only cited to Plaintiff's reports of pain after her fibromyalgia was formally diagnosed in 2018. *See* Tr. 24 (citing Tr. 577), 25 (citing 544, 548). The ALJ used the timing of those reports as a basis for discounting the severity of Plaintiff's symptoms before the date last insured, despite evidence in the record demonstrating that Plaintiff complained of chronic pain and fatigue during the relevant period. *See, e.g.*, Tr. 472 (noting, in October 2014, that Plaintiff takes Vicodin for various pain, including back pain), 480 (noting, in July 2015, that Plaintiff suffers "malaise and fatigue"), 482 (recommending a sleep study in July 2015 because Plaintiff "continues to feel quite fatigued much of the time"), 486 (noting that Plaintiff complained of low back pain in June 2016), 489 (noting, in November 2016, that Plaintiff "complains of stiffness and pain in her neck with intermittent pain radiating to left shoulder" and that Plaintiff "has a history of low back pain but now complains of pain and numbness in her left leg [which] is not always associated with exacerbation of back pain"). Plaintiff also testified that she stopped working in 2012 because she could no longer do her job due to stress and pain. Tr. 41–42.

Because the ALJ did not evaluate Plaintiff's symptoms of pain during the relevant time period, I am left to infer that the ALJ based her conclusion on a lack of objective medical evidence. *See* Tr. 24 (noting Plaintiff's "conservative treatment" as a basis for the conclusion that Plaintiff's symptoms were not as severe as alleged). This is legal error. "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a

claimant's subjective complaints regarding symptoms of fibromyalgia[.]" *Arakas*, 983 F.3d at 97. The Fourth Circuit has explained that this is especially erroneous in cases where a claimant alleges disability due to fibromyalgia, as it is a disease without many diagnostic tools and with symptoms whose severity fluctuates over time. Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869, at *6 (S.S.A. July 25, 2012) ("For a person with [fibromyalgia], [the ALJ] will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'"); *Arakas*, 983 F.3d at 101 (noting that SSR 12-2p "requires ALJS to 'consider a longitudinal record whenever possible' when evaluating a disability claim based on fibromyalgia"). As in *Arakas*, the ALJ's "failure to conduct a holistic review of [Plaintiff's] longitudinal record indicates that [she] did not properly consider the waxing and waning nature of fibromyalgia." *Id.* at 102.

The ALJ also cited Plaintiff's "significant" activities of daily living as a basis for discrediting the alleged severity of her symptoms. Tr. 24. The ALJ, however, improperly misrepresented the extent to which Plaintiff reported she could perform these activities. *Compare id.* ("[Plaintiff] reported that she manages her personal care, makes simple meals, does some light housework, drives a car, grocery shops, and manages her personal finances. She reported that she watched television, talked to others on the phone, and spent a lot of time on her computer." (citing Tr. 254 and hearing testimony)*, with* Tr. 250 (Plaintiff describing her daily activities as "go to [the] bathroom, in pain, make breakfast in pain," sleep, "wake up[,] try to do stuff around the house in pain[,] rest, get dinner (try) in pain, go [to] bed"). "An ALJ may not consider the type of activities a claimant can perform without also considering the *extent* to which she can perform them." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis in original). Here, the ALJ did just that in rejecting Plaintiff's claims of debilitating pain largely due to the activities Plaintiff could allegedly perform without addressing Plaintiff's statements that these activities were severely limited by her conditions. *Arakas*, 983 F.3d at 100.

Additionally, the ALJ erred in rejecting Plaintiff's PCP's opinion corroborating the severity of Plaintiff's pain. Plaintiff's PCP has been treating Plaintiff "for many years," including during the relevant time period, and is "well acquainted with her health and history." Tr. 548. Thus, even though Plaintiff's PCP authored the medical opinion after the date last insured, the conclusions in that opinion, including those regarding the severity of Plaintiff's symptoms, were likely reflective of Plaintiff's symptoms prior to the date last insured. *See Allord,* 455 F.3d at 822 ("Retrospective diagnosis of an impairment, even if uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment."); *Miocic v. Astrue*, 890 F. Supp. 2d 1046, 1056 (N.D. Ill. 2012) ("Given the longevity and frequency of the treatment relationship . . . the ALJ improperly concluded that [the treating physician's] opinion had no probative value where the record reflects a long term treating relationship and consistent treatment for lupus, fibromyalgia, and related symptoms which pre-date the date last insured."); *Christine L. v. Saul*, 450 F. Supp. 3d 1091, 1105 (D. Or. 2020) (explaining that a medical opinion made after the date last insured may still be relevant in assessing a claimant's symptoms prior to that date and finding that an ALJ "erred in discounting [the medical source's] opinion on the grounds that it was issued after Plaintiff's date last insured and did not specifically state that it applied to the relevant time period"). Because the

*Vicki S. v. Kijakazi*
Civil No. 22-1211-BAH
May 24, 2023
Page 7

ALJ improperly evaluated Plaintiff's symptoms related to her severe fibromyalgia, remand is warranted.

## V.     **CONCLUSION**

     For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 12, is GRANTED insofar as it seeks remand as remedy, and Defendant's motion for summary judgment, ECF 15, is DENIED.  Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis.  The case is REMANDED for further proceedings in accordance with this opinion.  The clerk is directed to CLOSE this case.

     Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.


                              Sincerely,

                              /s/

                              Brendan A. Hurson
                              United States Magistrate Judge